UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOELLEN HEADLEY, et al., | ) | CASE NO.  5:13-cv-1839 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| HOME DEPOT U.S.A., INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

This matter is before the Court on the motion for summary judgment filed by defendants Home Depot U.S.A., Inc. and Home Depot Store Support LLC (collectively, "defendants" or "Home Depot"). (Doc. No. 17.) Plaintiffs have filed an opposition (Doc. No. 29), and defendants have filed supplemental exhibits (Doc. No. 24), as well as a reply (Doc. No. 33). The matter is fully briefed and is ripe for adjudication.

I.  **Factual and Procedural Background**

On July 31, 2011, between 12:00 and 1:00 PM, plaintiff Joellen Headley ("Headley") and her husband, plaintiff Ronnie Headley, visited defendants' store located in Massillon, Ohio, on Lincoln Way East. (Doc. No. 17 at 104.) Headley estimated that she had visited this location one to two times per year since its construction over a decade ago. (Headley Dep., Doc. No. 18 at 177.)

On the date in question—a hot and sunny summer Sunday—Headley wore sandals with a 1.5" to 2" heel. (*Id*. at 208-09.) Headley accessed the store through the open-air Garden Center entrance, one of two available customer entrances. (*Id*. at 177-78.) After crossing

a paved area between the Garden Center and the parking lot, Headley entered the Garden Center without incident. (*Id*. at 193.) Headley did not look at the ground as she entered the Garden Center, testifying that though "[t]here could have been a hose[,]" she could not recall seeing one as she entered. (*Id*. at 192.)

Once inside the Garden Center, Headley and her husband took five to ten minutes to strategize their shopping excursion. (*Id*. at 195.) As agreed upon, Ronnie Headley walked toward the main store to purchase merchandise inside while Headley returned outside to browse the flowers located in the paved area between the parking lot and Garden Center. (*Id*.)  Headley saw two Home Depot employees inside the Garden Center, neither of whom mentioned or warned of a hose on the ground. (*Id*. at 194.) Headley does not recall seeing any Home Depot employees lay down a hose during her conversation with her husband. (*Id*. at 234.)

After speaking with her husband, Headley turned back towards the open-air entrance. Before reaching the threshold of the Garden Center, she stepped on a hose, felt her ankle pop, and fell forward. (*Id.* at 196.) Headley testified that the hose "rolled with [her] ankle[]" when she stepped on it, causing her to fall forward. (*Id*. at 211.) As Headley fell, she looked down and saw the hose:

> Q: So is it your testimony that as you are standing erect, the split second you begin to fall, you look down and, at that point, you see the hose on the ground?
> A: Yes.
> Q: Okay. Do you see the hose moving in that split second?
> A: No, I did not, actually, see it moving. I just felt it under my foot.

(*Id*. at 217.) She landed "between the inside of the store and the outside of the store." (*Id*. at 196.)

Directly before her fall, Headley "was looking around at the store, what was around [her,]" and did not see the hose before stepping on it. (*Id*. at 205.) She admitted that she

"should have been looking where [she] was going." (*Id*. at 226.) She cannot recall whether she glanced at the floor, but distinctly denied seeing the hose before she fell:

> Q: -- did you at least glance down to the floor to see what was on the floor?
> A: I don't recall. I may have. I don't know.
> \*\*\*
> Q: Okay. Did you ever see the hose before you fell?
> A: No, sir.

(*Id*. at 205.) Headley admitted that she had no visibility problems inside the Garden Center. (*Id*. at 204.) Both near- and farsighted, Headley wears glasses to drive, but does not recall whether she wore glasses on the date in question. (*Id*. at 182.)

Headley suffered a fractured right ankle in the fall, which is presently "doing well[,]" though it causes Headley discomfort in cold temperatures or when she stays on her feet too long. (*Id*. at 236.) She also fractured her left shoulder in three places, necessitating surgery in August 2011. (*Id*. at 237-38.) Due to persistent pain in her left shoulder, Headley has used prescription strength ibuprofen since her fall. (*Id*. at 238.) While her orthopedic surgeon recommends an additional shoulder surgery to ameliorate lingering pain and improve mobility, Headley has thus far declined the surgery, citing her work schedule. (*Id*. at 239-40.) At present, in addition to her pain level—five out of ten—she cannot raise her left arm over her head, sleep on her left side, swim, or lift heavy objects. (*Id*. at 242-43.)

On July 25, 2013, plaintiffs filed negligence and loss of consortium claims against defendants in the Stark County Common Pleas Court (Doc. No. 1-1), and defendants timely removed to this Court. (Doc. No. 1.) Defendants now move for summary judgment, claiming that plaintiffs have failed (1) to present any evidence that Home Depot knew or should have known that the hose posed a danger or (2) to show that the hose was not an open and obvious condition. (Doc. No. 17.) Plaintiffs oppose. (Doc. No. 29.) To show that Home Depot had notice, they

3

supplied the affidavit of Ronnie Headley, in which he states that a Home Depot employee informed him "that she had advised her supervisor prior to the incident that it was just a matter of time until someone was going to fall over the hose stretched across the aisle way floor." (Doc. No. 29-1.) To refute the allegation that the hose was an open and obvious danger, plaintiffs argue that "[t]he presence of a hose to lie on the floor stretching across an aisle way while customers were shopping during a busy period is not so ordinary or common that it cannot be considered unreasonably dangerous." (Doc. No. 29 at 317.) In their reply brief, defendants argue that plaintiffs failed to show that the hose was not an open and obvious danger and that the affidavit of Ronnie Headley cannot be considered, as it is inadmissible hearsay. (Doc. No. 33.)

## II. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

**III. Law and Analysis**

Under Ohio law, "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St. 2d 282, 285, 423 N.E.2d 467 (1981) (citing *Feldman v. Howard*, 10 Ohio St. 2d 189, 193, 226 N.E.2d 564 (1967)). The duty owed by a landowner to an entrant depends upon the entrant's status. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St. 3d 312, 315, 662 N.E.2d 287 (1996). Landowners owe invitees—those who have entered the property by invitation, express or implied, for a purpose beneficial to the owner—the duty to exercise ordinary care by "maintaining the premises in a safe condition." *Provencher v. Ohio Dep't of Transp.*, 49 Ohio St. 3d 265, 266, 551 N.E.2d 1257 (1990). The duty of ordinary care also includes warning the invitee of unreasonably dangerous latent conditions. *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App. 3d 494, 497, 693 N.E.2d 807 (Ohio Ct. App. 1996) (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203, 203, 480 N.E.2d 474 (1985)). The parties do not dispute that Headley was an invitee, and, absent circumstances described below, was owed the duty of reasonable care by defendants.

An open and obvious danger obviates the landowner's duty to an invitee and completely bars recovery. If discoverable by someone "acting with ordinary care under the circumstances[,]" an open and obvious danger does not trigger the landowner's duty to warn. *Hissong v. Miller*, 186 Ohio App. 3d 345, 351, 927 N.E.2d 1161 (Ohio Ct. App. 2010) (citation omitted). Rather, these dangers "serve as their own warning[.]" *Kintner v. ALDI, Inc.*, 494 F. Supp. 2d 811, 815 (S.D. Ohio 2007) (citing *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St. 3d 79, 80, 788 N.E.2d 1088 (2003)). Businesses may assume that "'persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *McGuire*, 118

Ohio App. 3d at 497 (quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 644, 597 N.E.2d 504 (1992)).

In finding a danger open and obvious—an objective inquiry—a court determines whether "the condition is observable." *Kirksey v. Summit Cnty. Parking Deck*, No. Civ. A. 22755, 2005 WL 3481536, at *3 (Ohio Ct. App. Dec. 21, 2005). Under this objective standard, the invitee need not have actually observed the dangerous condition, provided that the condition was observable. *Hissong*, 186 Ohio App. 3d at 352. Accordingly, the Court must look to "the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong*, 99 Ohio St. 3d at 82. Observability, the central issue, "depends upon the particular circumstances surrounding the hazard . . . and is extremely fact-specific," constituting a jury question when the facts are disputed or open to multiple interpretations. *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 725 (6th Cir. 2012) (citations and quotation marks omitted). If "only one conclusion can be drawn from the established facts," however, "the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Klauss v. Glassman*, No. 84799, 2005 WL 678984, at *3 (Ohio Ct. App. Mar. 24, 2005) (citations omitted).

For example, an ankle high pallet extending four to six inches into a busy grocery store aisle might not be readily observable, *Kintner*, 494 F. Supp. 2d at 816, while a pile of boxes in the middle of a similar grocery store aisle would be. *Parsons v. Lawson Co.*, 57 Ohio App. 3d 49, 51, 566 N.E.2d 698 (Ohio Ct. App. 1989). An immediate step down in a bathroom obstructed by an inwardly opening door might not be readily observable, *Hissong*, 186 Ohio App. 3d at 354, while an unobstructed 2.5" threshold step at a store entrance is readily observable. *Freeman v. Value City Dep't Store*, No. 2010 CA 00034, 2010 WL 3766806, at *4 (Ohio Ct. App. Sept. 27,

2010). When the grass is of uniform height all around, campground patrons might not necessarily observe a hole in the ground, *Andler*, 670 F.3d at 721; however, bar patrons could readily observe a knee-high fire pit five feet in diameter at an outdoor bar. *Vanderbilt v. Pier 27, LLC*, 2 N.E.3d 966, 972 (Ohio Ct. App. 2013). Weight limits on sample lawn chairs might not be an observable danger, *McElhaney v. Marc Glassman, Inc.*, 174 Ohio App. 3d 387, 397, 882 N.E.2d 455 (Ohio Ct. App. 2007), likewise, trampoline hazards arising only when multiple people simultaneously use a trampoline. *Lykins v. Fun Spot Trampolines*, 172 Ohio App. 3d 226, 235-36, 874 N.E.2d 811 (Ohio Ct. App. 2007). Generally, however, imperfections and obstructions in the middle of a floor or aisle, the most mundane of dangers, are readily observable. *See, e.g.*, *Parsons*, 57 Ohio App. 3d at 51 (pile of small boxes); *McGuire*, 118 Ohio App. 3d at 498 (raised ceramic tile); *Davis v. Kmart Corp.*, No. 4:10CV2127, 2011 WL 4730523, at *3-4 (N.D. Ohio Oct. 7, 2011) (milk drips).

Here, Headley stepped on a garden hose stretched across the Garden Center floor. Though Headley did not see the hose before she fell, she repeatedly admitted that she did not look at the floor, but looked at the merchandise on offer instead. (*See, e.g.*, Headley Dep. at 205, 206, 226.) She even testified that she saw the hose once she looked down, albeit in the midst of falling. (*Id*. at 216-17.) The record clearly shows that nothing obstructed or obscured Headley's view of the ground:

> Q: With regard to the inside portion of the building – I want to be clear – did you have any problems with visibility as you entered the building going from the boundary line inward?
> A: No.
> Q: Did you have any problems with visibility?
> A: No, I did not.

(*Id*. at 204.) Nor did anything about the hose's placement render it not readily observable. Unlike the protruding pallet in *Kintner*, this hose stretched openly across the floor.[1] Like milk drips or small boxes in a grocery store, nothing about a garden hose in a Garden Center is unexpected, unpredictable, or unobservable, as Headley herself admitted. (*See id.* at 222.)

In their opposition to the motion, plaintiffs state that a garden hose stretched across a floor cannot, as a matter of law, be an open and obvious danger to shoppers looking at merchandise during busy shopping hours. (Doc. No. 29 at 317.) This statement does not refute Headley's uncontroverted testimony that her view of the floor was unobstructed, and once she actually looked down, she saw the hose. Open and obvious conditions are fact-specific, and the uncontested facts here prompt only one conclusion: the hose was readily observable. Because an invitee acting with reasonable care would have observed the hose and taken steps to protect against it, Home Depot, as a matter of law, owed Headley no duty to warn about the hose. Thus, plaintiffs cannot meet the first essential element of their case for actionable negligence—the existence of a duty—and defendants are entitled to judgment as a matter of law.

If plaintiffs had shown that Home Depot owed Headley a duty, they also would have been obliged to show that Home Depot breached its duty. In their briefing, the parties presented arguments relative to Home Depot's purported breach. Plaintiffs provided an affidavit claiming that Home Depot knew the hose constituted a dangerous condition and therefore breached its duty to Headley by allowing the hose to remain on the ground. (Doc. No. 29-1.) Defendants argued that the affidavit is inadmissible hearsay. (Doc. Nos. 17, 33.) The Court need not address the parties' contentions because, as previously discussed, the hazard was open and

---

[1] Exhibit A to Headley's deposition is a photograph of the Garden Center entrance. (Doc. No. 17-2 at 154.) The photograph depicts a light-colored concrete floor. The photograph also shows a contrasting colored red hose hanging on the wall.

obvious, meaning Home Depot owed Headley no duty.

Because plaintiffs have not sufficiently established Home Depot's duty, defendants are entitled to summary judgment on plaintiffs' negligence claim and loss of consortium claim, the latter of which is derivative of the negligence claim. *See Bowen v. Kil-Kare, Inc.*, 63 Ohio St. 3d 84, 92-93, 585 N.E.2d 384 (1992) ("[W]e recognize that a claim for loss of consortium is derivative in that the claim is dependent upon defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury.").

### IV. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

Dated: July 8, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

10